UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

LEIGH ANN HUTCHINSON, M.D.,

                       Plaintiff,

    -against-

NORTHWELL HEALTH, INC.,

                       Defendant.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**
CV 23-2116 (GRB)(LGD)

**GARY R. BROWN, United States District Judge:**

Presently before the Court is defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Docket Entry ("DE") 35. For the reasons stated herein, that motion is GRANTED WITHOUT PREJUDICE.

**Background**

All factual allegations are drawn from the amended complaint and taken as true for the purpose of deciding this motion. Plaintiff Leigh Ann Hutchinson, M.D., is a licensed physician and surgeon specializing in cardiology and electrophysiology. Amended Complaint, DE 19 ¶¶ 8-9. Plaintiff began working with defendant Northwell Health, Inc. in 1997. *Id.* ¶ 13. Among other things, plaintiff successfully performed numerous surgeries at defendant's Southside Hospital (now known as South Shore University Hospital) and served as Chairperson of Southside's Electrophysiology Department. *Id.* ¶¶ 13-31. During this time, plaintiff was "an independent contractor having ongoing and continuous privileges to practice cardiology" at defendant's hospitals. *Id.* ¶ 39.

In 2004, one of plaintiff's patients died during a complex electrophysiological surgery at Southside Hospital. *Id.* ¶ 50. Defendant submitted the patient's file to a peer review panel,

1

which found that plaintiff performed the procedure according to industry standards and that the mortality was the result of "known potential complications or risks of the procedure." *Id.* ¶¶ 51-55. Despite these findings, defendant disciplined plaintiff in several ways, including by prohibiting her from performing any surgeries for three months and directing her to complete remedial training. *Id.* ¶¶ 58-61.

Defendant continued to impose restrictions on plaintiff both at Southside Hospital and at newly-acquired South Nassau Hospital, where plaintiff had practiced without incident prior to defendant's takeover. *Id.* ¶¶ 91-92. This situation continued for over a decade, during which Southside's emergency room physicians informed plaintiff that they were not permitted to refer any patients to her, significantly impairing plaintiff's practice. *Id.* ¶ 122. In 2018, while preparing to perform surgery at Southside Hospital, plaintiff was physically escorted from the room by the head of the electrophysiology department and informed that she did not have any hospital privileges there. *Id.* ¶¶ 125-28. In the years since, plaintiff has applied for and been denied hospital privileges at both Southside Hospital and Lenox Hill Hospital, which is also owned by defendant; being unable to see patients at these facilities has prevented plaintiff from obtaining and retaining Long Island-based patients, damaging her professional reputation and costing her substantial business. *Id.* ¶¶ 133-43.

Plaintiff alleges that defendant's actions against her were motivated by discrimination. Plaintiff is an African American woman and the electrophysiological surgeons currently working at defendant's facilities are predominantly white men. *Id.* ¶¶ 62, 68, 80, 118-20, 137. Plaintiff also alleges that defendant retaliated against her, as the treatment worsened after she submitted her grievances in writing to defendant's general counsel, filed complaints with the New York State Division of Human Rights, and sent a letter to the governor of New York. *Id.* ¶¶ 73, 75,

85, 200.  Ultimately, plaintiff filed the instant suit in 2023, asserting that defendant impaired her ability to make or enforce contracts due to her race in violation of 42 U.S.C. § 1981 and retaliated against her for asserting her rights under that statute.  *Id.* ¶¶ 186-208.  Plaintiff also brings claims for race discrimination, sex discrimination, and retaliation under the New York State Human Rights Law and the New York City Human Rights Law.  *Id.* ¶¶ 209-247.  Defendant filed this motion to dismiss on February 27, 2024, DE 35, along with a memorandum in support.  DE 35-13.  Plaintiff submitted a memorandum in opposition, DE 36, and defendant filed a memorandum in further support.  DE 37.

**Discussion**

*Standard of Review*

Motions to dismiss are decided under the well-established standard of review for such matters, as discussed in *Burris v. Nassau County District Attorney*, No. 14-5540 (JFB) (GRB), 2017 WL 9485714, at *3–4 (E.D.N.Y. Jan. 12, 2017), *adopted by* 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017), and incorporated by reference herein.  The gravamen of that standard, of course, is the question of whether, assuming the allegations of the complaint to be true solely for the purposes of the motion, the complaint sets forth factual material to render the claims plausible.  *See id.*

*Requirements for a § 1981 Claim*

"To establish a claim under 42 U.S.C. § 1981, a plaintiff must allege facts supporting that (1) the plaintiff is a member of a racial minority; (2) defendant's intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities," such as the making and enforcement of contracts.  *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 848 (2d Cir. 2022) (internal quotations omitted).  "Any claim brought under § 1981…must

3

initially identify an impaired contractual relationship under which the plaintiff has rights," including a prospective contractual relationship the plaintiff was prevented from entering due to racial discrimination. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (internal citations omitted).[1] *Id.*

Plaintiff's complaint clearly satisfies the first requirement for a § 1981 claim. The second requirement—to wit, the intent to discriminate—is a closer call, but plaintiff's allegation that defendant targeted only her—and not white male doctors she asserts were similarly situated—is sufficient to pass muster at the pleading stage. *See, e.g.*, *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) (explaining that "[a] plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably"); *see also Buon v. Spindler*, 65 F.4th 64, 83 (2d Cir. 2023) ("[W]e have cautioned courts to be mindful of the elusive nature of intentional discrimination when making a plausibility determination at the motion-to-dismiss phase because discrimination claims implicate an employer's usually unstated intent and state of mind and therefore rarely is there direct, smoking gun, evidence of discrimination."). Plaintiff's § 1981 claims therefore depend on whether she has adequately alleged that the discrimination related to the making and enforcement of a contract under which she has rights.

Plaintiff does not allege the existence of any employment contract with defendant—nor can she, as the amended complaint states that plaintiff was "an independent contractor having ongoing and continuous privileges to practice cardiology" at defendant's facilities. DE 19 ¶ 39.

---

[1] In *Domino's Pizza*, the Supreme Court unanimously found that the sole shareholder of a corporation could not bring a § 1981 claim against a party that breached its contracts with the corporation because the shareholder himself did not have rights under those agreements, even though the breach was allegedly motivated by racial animus against the shareholder. 546 U.S. at 477. *See also Mitchell-Foxworth v. Am. Bible Soc.*, 180 F. App'x 294, 295 (2d Cir. 2006) ("[Defendant's] alleged failure to support marketing efforts targeted at the African-American community did not interfere with any contract to which Mitchell-Foxworth was a party on account of Mitchell-Foxworth's race.").

4

However, plaintiff asserts that these privileges were revoked (and her reapplications for privileges were denied) in a manner inconsistent with hospital bylaws.  In her motion papers, plaintiff argues these bylaws were intended to bind both hospital and physician, creating enforceable contracts giving rise to § 1981 claims.  *See* DE 36 at 11-15.  Defendant vigorously contests this conclusion, but both parties agree that, since the bylaws are relied upon in the complaint, they may be considered by the Court in deciding the instant motion.[2]  *Id.* at 10; *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (finding that district court deciding Rule 12(b)(6) motion could consider contracts that were "integral to the Amended Complaint").  Therefore, the Court proceeds to consider if defendant's hospital bylaws constitute contracts under which plaintiff has rights.

*Contractual Rights from Hospital Bylaws*

In *Mason v. Cent. Suffolk Hosp.*, 3 N.Y.3d 343, 346 (N.Y. 2004), the New York Court of Appeals held that, in general, "no action for damages may be based on a violation of medical staff bylaws."  The *Mason* court concluded that public policy considerations made it "preferable for hospital administrators [to] decide whether to grant or deny staff privileges…free from the threat of a damages action against the hospital" and noted that a state statute permits an aggrieved physician to seek injunctive relief to restore wrongfully revoked practicing privileges.  *Id.* at 347–48.  The court did provide an exception to the general prohibition on damages actions if "clear language in the bylaws creates a right to that relief."  *Id.* at 346.  "A clearly written contract, granting privileges to a doctor for a fixed period of time, and agreeing not to withdraw

---

[2] In addition to the hospital bylaws, defendant has submitted several "letter agreements" purportedly signed by and/or applicable to plaintiff.  DE 35-10, 35-11, 35-12.  Plaintiff argues, and the Court agrees, that the content of these letters cannot be considered on a motion to dismiss because they were not attached to or relied upon in the amended complaint.  DE 36 at 10.  For the same reason, the Court also cannot evaluate whether any of these agreements would be sufficient to support § 1981 claims.

5

those privileges except for specified cause, will be enforced." *Id.* at 348–49. Determining that the bylaws at issue did not meet this standard, the court wrote:

> Not a word in the bylaws that are now before us says or implies that doctors have a vested right to hospital privileges. The most relevant provisions of the bylaws are procedural, not substantive: They are contained in article V (Procedure for Appointment and Reappointment) and article VI (Hearing and Appeal Procedures). It is most unlikely that these bylaw provisions were intended by anyone to create a monetary claim in favor of a doctor for wrongful termination or suspension of privileges…. Dr. Mason claims that the Hospital acted in bad faith and with malice, and that therefore he may sue. It is farfetched, however, to suggest that section 7.4, entitled "Immunity from Liability," was intended to create a liability where one would otherwise not exist.

*Id.* at 349. Finally, the court reaffirmed a prior case holding that a doctor cannot sue a hospital for breach of contract based solely on "failure to observe bylaws and procedures." *Id.* (quoting *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 90 (N.Y. 1999)).

Court decisions applying *Mason* confirm that hospital bylaws will only rarely create contractual rights. Most state court decisions have found that the bylaws at issue were not intended to permit civil liability for the hospital. *See, e.g.*, *Meyer v. N. Shore-Long Island Jewish Health Sys., Inc.*, 137 A.D.3d 878, 879 (2d Dep't 2016) ("defendants conclusively established that the Medical Staff Bylaws relied upon by the plaintiff did not constitute a valid contract"); *Lobel v. Maimonides Med. Ctr.*, 39 A.D.3d 275, 277 (1st Dep't 2007) (same); *but see Anesthesia Assocs. of Mount Kisco, LLP v. N. Westchester Hosp. Ctr.*, 59 A.D.3d 473, 480 (2d Dep't 2009). Every federal court applying *Mason* has reached the same result.[3] *See Underwood v. Roswell Park Cancer Inst.*, No. 15-CV-684 (FPG), 2017 WL 131740, at *20 (W.D.N.Y. Jan. 13, 2017) (rejecting contractual claim stemming from hospital bylaws because the plaintiff "does not allege that clear language in the bylaws creates a right to money damages") (internal quotations

---

[3] The one apparent exception, *Kaufman v. Columbia Mem'l Hosp.*, 2 F. Supp. 3d 265 (N.D.N.Y. 2014), involved a different factual situation. The plaintiff there did not allege that hospital bylaws themselves created a contractual right to relief; rather, he successfully argued that his employment contract with the hospital incorporated the bylaws by reference. *Id.* at 281. As plaintiff in this case has no employment agreement with defendant, the *Kaufman* court's reasoning is inapplicable.

omitted); *U.S. ex rel. Smith v. New York Presbyterian Hosp.*, No. 06 CIV 4056 (NRB), 2007 WL 2142312, at *16 (S.D.N.Y. July 18, 2007) (same).

Here, plaintiff relies on the bylaws of Southside Hospital and Lenox Hill Hospital, which are similar and can be considered together. *See generally* DE 35-8, DE 35-7. Plaintiff first points to the Southside bylaws' "extensive due process-type hearing process." DE 36 at 7. This process is akin to the "Hearing and Appeal Procedures" that the *Mason* court termed "procedural, not substantive" and "unlikely [to have been] intended by anyone to create a monetary claim." *Mason*, 3 N.Y.3d at 349. Moreover, as the Court of Appeals explained in *Maas*, a hospital's failure to follow its own bylaws does not ordinarily give rise to a breach of contract claim. 94 N.Y.2d at 90. Most importantly, both sets of bylaws relied on by plaintiff include a section entitled "Immunity From Liability." *See* DE 35-7 at 70; 35-8 at 115. Lenox Hill's bylaws state that, "[t]o the fullest extent permitted by law, there shall be absolute immunity from civil liability arising from any…acts, communications, reports, recommendations, or disclosures performed or made in connection with…(1) applications for appointment or clinical privileges [or] (2) periodic reappraisals for reappointment or clinical privileges." DE 35-7 at 71. Southside's "Immunity From Liability" provision is substantially similar in scope. DE 35-8 at 115. The Court finds it implausible—as did the *Mason* court—that bylaws containing explicit assertions of immunity were intended to permit civil liability. *See* 3 N.Y.3d at 349. In short, nothing in either set of bylaws suggests they are the rare variety intended to create an enforceable contract; instead, these bylaws are analogous to those found insufficient to establish a right to damages in *Mason*. As such, the Court finds that plaintiff has not plausibly alleged that she had contractual rights under either set of bylaws.

Although no court applying New York law has faced this exact issue, it logically follows

7

that, given that the bylaws would be unable to support a breach of contract claim, they also cannot give rise to § 1981 claims.  Other federal courts have consistently dismissed § 1981 claims premised on hospital bylaws after determining that those bylaws could not support a breach of contract claim under state law.  *See, e.g.*, *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1309 (11th Cir. 2010); *Johnson v. Spohn*, 334 F. App'x 673, 686 (5th Cir. 2009); *Talwar v. Cath. Healthcare Partners*, 258 F. App'x 800, 803–04 (6th Cir. 2007).  Accordingly, plaintiff's § 1981 claims are dismissed.[4]  Since plaintiff may have agreements with defendant that were not referenced in the amended complaint, this dismissal will be without prejudice.[5]

*State Law Claims*

Having determined that plaintiff's § 1981 claims cannot proceed as currently pleaded, the Court must consider the appropriate disposition of the remaining claims.  Per 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction" over state law claims "if the district court has dismissed all claims over which it has original jurisdiction."  "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain," the case should generally be dismissed without prejudice to refile in state court.  *See TPTCC NY, Inc. v. Radiation Therapy Servs., Inc.*, 453 F. App'x 105, 107 (2d Cir. 2011) (finding that the district court abused its discretion by exercising supplemental jurisdiction over state law claims after all federal claims were dismissed at the pleading stage).

Plaintiff's § 1981 claims are the only federal causes of action asserted in the amended complaint; now that those claims have been dismissed, the Court declines to exercise

---

[4] Given the basis for the Court's decision, other arguments raised by defendant—including the assertion that most of the alleged harm stemmed from acts occurring outside the statute of limitations—are not addressed at this juncture.
[5] Although the "letter agreements" submitted by defendant cannot be considered on the instant motion, the Court notes that it appears plaintiff signed these agreements on behalf of her practice group and a limited liability company.  *See* DE 35-10 at 3; 35-11 at 4; 35-12 at 3.  As such, plaintiff should be mindful before repleading that a § 1981 claimant must "identify an impaired contractual relationship under which the *plaintiff* has rights," as opposed to a related entity.  *See Domino's Pizza*, 546 U.S. at 476 (emphasis added).

supplemental jurisdiction over the remaining state law claims, which are dismissed without prejudice.

**Conclusion**

For the foregoing reasons, defendant's motion to dismiss is GRANTED WITHOUT PREJUDICE.

**SO ORDERED.**

Dated: Central Islip, New York
      March 27, 2024

                                      **/s/ Gary R. Brown**
                                      GARY R. BROWN
                                      United States District Judge